| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |
| ------------------------------------------------------------------x<br>In re:<br><br>TRONOX INCORPORATED, et al.,<br><br><br>                                        Debtors.<br>------------------------------------------------------------------x<br>RTI HAMILTON, INC.,<br><br>                                        Plaintiff,<br><br>     -against-<br><br>TRONOX LLC,<br><br>                                        Defendant.<br>------------------------------------------------------------------x | Chapter 11<br><br>Case No. 09-10156 (ALG)<br><br>Jointly Administered<br><br><br><br><br>Adv. Pro. No. 09-01488 (ALG) |

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

BUCHANAN INGERSOLL & ROONEY PC
Counsel for the Plaintiff
  By:   Charles B. Gibbons, Esq.
        Michael J. Manzo, Esq.
        Daniel C. Garfinkel, Esq.
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, Pennsylvania 15219

  By:   Christopher P. Schueller, Esq.
620 Eighth Avenue, 23rd Floor
New York, New York 10018

KIRKLAND & ELLIS LLP
Counsel for the Defendant
  By:   David J. Zott, Esq.
        Patrick J. Nash, Jr., Esq.
        Jeffrey J. Zeiger, Esq.
        David H. DeCelles, Esq.
300 North LaSalle Street
Chicago, Illinois 60654

By:   Richard M. Cieri, Esq.
      Jonathan S. Henes, Esq.
601 Lexington Avenue
New York, New York 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Tronox LLC ("Tronox" or "Defendant"), one of the Debtors, has moved to dismiss the complaint (the "Complaint") of RTI Hamilton, Inc. ("RTIH" or "Plaintiff") filed in the above-referenced adversary proceeding. In the Complaint, RTIH asserts three claims for relief based on an agreement between the parties for the supply of industrial chemicals: (1) breach of contract, (2) breach of implied duty of good faith and fair dealing, and (3) rescission based on unilateral or, alternatively, mutual mistake. Tronox moves to dismiss for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss is granted.

## Facts Alleged in the Complaint

The following facts alleged in the Complaint, presented in the light most favorable to the Plaintiff, are assumed to be true for purposes of this decision.

Tronox owns and operates a titanium dioxide pigment manufacturing facility located in Hamilton, Mississippi. Titanium dioxide is primarily used in the whitening of products such as paint, plastics, and paper. Plaintiff RTIH is a subsidiary of RTI International Metals, Inc. ("RTI"), a company in the business of producing and supplying titanium mill products for the commercial and U.S. military aviation markets.

In late 2006, RTI found itself unable to secure sufficient titanium sponge, a porous form of the metal essential in the milling process, because of external market factors. In order to ensure a reliable flow of titanium sponge, RTI and RTIH engaged Tronox in discussions that ultimately resulted in the execution of a Master Supply Agreement, dated March 25, 2008 (the

2

"Supply Agreement"), and a Master Ground Lease of Commercial/Industrial Property, dated June 3, 2008 (the "Ground Lease" and, together with the Supply Agreement, the "Agreements"). The Supply Agreement, at issue in this proceeding, is governed by Mississippi law.[1]

The manufacture of titanium sponge requires the capture and use of titanium tetracholoride ("$TiCl_4$"). The Agreements contemplated that RTIH would construct a titanium sponge manufacturing plant on a site adjacent to Tronox's Hamilton location in order to be able to access product from Tronox. RTIH also agreed to pay for related capital improvements to Tronox's Hamilton facility. In exchange for the $TiCl_4$, Tronox was to receive a chlorine gas by-product of the titanium sponge from RTIH, both chemicals to be delivered via pipelines to be constructed between the two facilities.

The Complaint alleges that since the Agreements were executed, RTIH has invested millions of dollars in connection with the preliminary stages of constructing its new Hamilton plant, including "preliminary engineering design work, environmental investigations, procurement of equipment, site preparation and other expenses in anticipation of developing the future … facility." Complaint ¶ 24. However, the Complaint does not assert that RTIH has *actually* broken ground on the construction of the project, and it admits that RTIH announced delays in the fall of 2008, as Tronox appeared to move toward a bankruptcy filing. The Complaint further alleges that after Tronox filed for Chapter 11 protection on January 12, 2009, RTIH became aware of Tronox's complaint (the "Anadarko Complaint") against Anadarko Petroleum Corporation ("Anadarko") and Kerr-McGee Corporation ("Kerr-McGee"). In the Anadarko Complaint, Tronox has alleged, *inter alia*, that when it was spun-off from Kerr-McGee on March 31, 2006, it was grossly undercapitalized and insolvent.

---

[1] Article 21 of the Supply Agreement states, "This Agreement … shall be governed, construed and enforced in accordance with the laws of the State of Mississippi, notwithstanding any jurisdiction's choice of law rules to the contrary."

3

The Complaint in this action concludes with the allegation that Tronox failed to disclose its financial status to RTIH during the negotiation and execution of the Agreements, a charge that is the basis of Plaintiff's claims.

## Discussion

**A.    Legal Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012(b), is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (citation omitted), *cert. denied*, 519 U.S. 1007 (1996); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). "It is elementary that, on a motion to dismiss, a complaint must be read as a whole, drawing all inferences favorable to the pleader." *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985), *citing Conely v. Gibson*, 355 U.S. 41, 47-48 (1957).

While a complaint need not include detailed factual allegations, the plaintiff must incorporate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "[O]nce a claim has been stated adequately, it may be

4

supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 546; *accord Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." In accordance with the liberal pleading standards of Rule 8, "a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000), *quoting Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). However, a complaint alleging mistake, pursuant to Rule 9(b), "must state with particularity the circumstances constituting … mistake." Fed. R. Civ. P. 9(b); *see also Rombach v. Chang*, 355 F.3d 164, 170 (2d. Cir. 2004). It has been held that a claim based on mistake "must particularize (1) the mistake[,] (2) the identity of the individuals that made the mistake, (3) the nature of their misunderstanding, and [(4)] when and where the mistake occurred." *Responsible Pers. of Musicland Holding, Corp. v. Best Buy Co., Inc.*, 398 B.R. 761, 782 (Bankr. S.D.N.Y. 2008), *citing Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 248 (S.D.N.Y. 2006).

**B.    Claim of Breach of Contract under Mississippi Law**

Plaintiff first claims that Tronox breached the Supply Agreement by misrepresenting its financial condition or failing to disclose that it was at all times grossly undercapitalized or insolvent—exactly what Tronox itself claims in the Anadarko Complaint. Plaintiff asserts that it was unaware of Tronox's "true" financial condition at the time the Supply Agreement was executed and that this financial condition, and particularly Tronox's Chapter 11 filing, will impede RTIH's "full enjoyment of the rights and privileges granted" in the contract.

5

Plaintiff's claim of breach of contract can easily be disposed of within the four corners of the contract at issue, the Supply Agreement. The contract contains a merger clause that conclusively establishes that the Supply Agreement is a fully integrated agreement that must be interpreted on its face. Supply Agreement § 22.1. Under Mississippi law, after viewing the instrument as a whole and without undue weight given to any one provision, a court "must 'accept the plain meaning of a contract as the intent of the parties if no ambiguity exists.'" *Qualcomm Inc. v. Am. Wireless License Group, LLC*, 980 So.2d 261, 269, 2007 Miss. LEXIS 645, at *11 (2007), *quoting B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 487, 2005 Miss. LEXIS 558, at *7 (2005). Whether a contract is ambiguous is a question of law for the Court. *Harris v. Harris*, 988 So. 2d 376, 378, 2008 Miss. LEXIS 395, at *5 (2008). In order to determine whether a contract contains any ambiguity, the Mississippi courts apply a three-tiered approach: (1) review the language the parties used in expressing their agreement; (2) if a clear understanding of the parties' intent is not forthcoming, the court should apply traditional canons of construction; (3) if the parties' intent is still elusive, parole evidence may be introduced to aid in interpretation. *Id.* at 379, 2008 Miss. LEXIS 395, at *5-6, *quoting Tupelo Redev. Agency v. Abernathy*, 913 So. 2d 278, 284, 2005 Miss. LEXIS 234, at *11-12 (2005).

Here, the language of the Supply Agreement within its four corners is clear and unambiguous. It carefully allocates responsibilities to the parties regarding the construction of the plant and the supply of product. On the other hand, it contains no representation or warranty by either party as to its financial condition, and it contains no obligation on either party to inform the other of matters relating to financial condition. The fact that Tronox has admitted in the Anadarko Complaint that it is and has been undercapitalized or insolvent does not constitute an automatic breach of a contract that does not otherwise contain a representation relating to

6

solvency or financial status. A contrary rule would permit a counterparty to a contract with a debtor in Chapter 11 to escape its contractual obligations by claiming that the debtor was insolvent and thereby in breach of the contract. "Merely filing for the protection of the bankruptcy court is not a repudiation of obligations or a cessation of operations … An insolvent firm is not necessarily out of business, and the parties with which it has contracts cannot automatically assume that the firm will default." *Cent. States, Se. and Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 917 (7th Cir. 2001).

In order to assert a claim of breach of contract, Plaintiff alleges that Tronox's failure to disclose its financial status breached § 14.1 of the Supply Agreement, which provides:

> Each party further represents and warrants to the other that … (ii) neither party has done or omitted to do, nor will do or omit to do, any act or thing that would or might impair, encumber, or diminish the other party's full enjoyment of the rights and privileges granted and to be granted under this Agreement.

In the absence of any explicit representation or warranty by Tronox as to its financial condition, or any obligation of Tronox to inform RTIH regarding the same, Plaintiff cannot assert that Tronox's undercapitalization or its subsequent bankruptcy breached this general clause. In fact, the Supply Agreement on its face contains a specific provision in which the parties attempted to protect RTIH in the event of Tronox's bankruptcy. Section 14.3 of the Supply Agreement provides as follows:

> TRONOX represents and warrants that, in the event it files a petition for relief protection under any chapter of the Bankruptcy Code … or if involuntary bankruptcy proceedings are initiated against TRONOX … then TRONOX, upon written request of [RTIH], shall seek the assumption (and assignment, if requested) of this Agreement pursuant to § 365 of the Bankruptcy Code (11 U.S.C. § 365), and/or other similar provisions of the Bankruptcy Code governing the assumption of executory contracts.

7

This is no boilerplate provision relating to the possibility of bankruptcy.[2]  This is a specific provision intended to provide protection to a counterparty such as RTIH that may be concerned about the effect of a Chapter 11 filing on a debtor's ability to perform under an executory contract.  Assuming that the provision is enforceable as drafted, it would require Tronox (on RTIH's request) to move to assume or assign the executory agreement and cure any default, and not to leave RTIH in doubt as to Tronox's intentions as to performance.  11 U.S.C. § 365(b).[3]

The presence of § 14.3 shows that RTIH secured rights through the Supply Agreement in order to protect itself from the very situation that RTIH now claims would diminish the contract's value and thereby breach § 14.1.  It demonstrates that the parties actually negotiated about and included a term regarding Tronox's financial condition.  Since § 14.3 of the Supply Agreement is a specific provision of the contract that deals explicitly with Tronox's financial condition, it must be given greater weight in contract interpretation than a more general clause, such as § 14.1.  *E.g.*, *Estate of Parker v. Dorchak*, 673 So. 2d 1379, 1382, 1996 Miss. LEXIS 195, at *9 (1996) ("[S]pecific clauses in a contract are to be given greater weight than general ones."); *see also* Restatement (Second) of Contracts § 203(c) (1981) ("[S]pecific terms and exact terms are given greater weight than general language.").[4]  The presence of § 14.3 in the Supply Agreement confirms beyond dispute that Tronox's undercapitalization or insolvency would not breach § 14.1 of the Supply Agreement.  The claim of breach of contract is dismissed.

---

[2] There is a boilerplate provision, § 16.2 of the Supply Agreement, which states, "Either party may immediately terminate this Agreement … by written notice to such effect to the other party if (i) bankruptcy, insolvency or reorganization proceedings … are instituted by or against the other party."  Such a clause, however, is unenforceable.  11 U.S.C. §§ 365(b)(2)(A) & (B).

[3] Even in the absence of a clause such as § 14.3, any counterparty can move the Bankruptcy Court for an order setting a deadline for a Chapter 11 debtor to move to assume or reject an executory agreement.  11 U.S.C. § 365(d)(2).

[4] The Mississippi courts rely on the Restatement.  *See, e.g.*, *Cenac v. Murray*, 609 So. 2d 1257, 1272, 1992 Miss. LEXIS 595, at *46 (1992) (discussing good faith and fair dealing); *City of Starkville v. 4-County Elec. Power Ass'n*, 819 So. 2d 1216, 1221-26, 2002 Miss. LEXIS 1, at *11-27 (2002) (discussing impracticability and frustration of purpose).

8

**C.   Claim of Breach of Implied Duty of Good Faith and Fair Dealing**

Plaintiff's next claim is that Tronox breached the provision of Mississippi law that reads into every contract an implied duty of good fair and fair dealing.  Under Mississippi law, "All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Limbert v. Miss. Univ. for Women Alumnae Ass'n.*, 998 So. 2d 993, 998, 2008 Miss. LEXIS 583, at *10 (2008), *citing Morris v. Macione*, 546 So. 2d 969, 971, 1989 Miss. LEXIS 319, at *6 (1989).  The rule is statutory.  Miss. Code Ann. 75-1-203 provides that "Every contract … imposes an obligation of good faith in its performance or enforcement."

RTIH alleges that Tronox breached its duty of good faith.  However, as indicated by both the words of the statute and the leading case quoted above, Mississippi law clearly provides that the obligation to act in good faith extends only to "performance" under or "enforcement" of a contract.  Here, RTIH's allegations as to bad faith by Tronox relate only to an alleged failure to disclose facts and conduct prior to the execution of the Supply Agreement.  As there are no allegations in the complaint that Tronox has acted in bad faith during performance under or enforcement of the contract, Defendant's motion to dismiss this claim must be granted.[5]

**D.   Claim for Rescission Based on Mistake**

Plaintiff's final claim is for rescission for mistake, either unilateral or mutual.  Since the allegations of the Complaint must be taken as true, it will be assumed *arguendo* that Plaintiff was mistaken as to Tronox's financial condition, notwithstanding the presence of § 14.3 of the contract.  Nevertheless, although Plaintiff may claim that it was mistaken, it cannot escape Fed. R. Civ. P. 9(b), made applicable here by Bankruptcy Rule 7009, requiring that allegations of

---

[5] This is not to say that Plaintiff has adequately pled bad faith.  Under Mississippi law, "Bad faith, in turn, requires a showing of more than bad judgment or negligence; rather, 'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'"  *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987, 2004 Miss. LEXIS 492, at *36 (2004), *quoting Bailey v. Bailey*, 724 So. 2d 335, 338, 1998 Miss. LEXIS 586, at *7 (1998).  There is no need to reach the issue of the pleading of bad faith.

9

mistake (like fraud) be pleaded with particularity. Application of the Rule 9(b) requirement to the Mississippi principles regarding contract rescission demonstrate that Plaintiff has failed to plead adequately either unilateral or mutual mistake.

### 1. Unilateral Mistake

Under Mississippi law, rescission of a contract on the ground of unilateral mistake is appropriate

> [1] where the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or [2] where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed in status quo; equity will interfere, in its discretion, in order to prevent intolerable injustice.

*Ruff v. Estate of Ruff*, 989 So. 2d 366, 370, 2008 Miss. LEXIS 410, at *9 (2008) (emphasis omitted), *quoting Rotenberry v. Hooker*, 864 So. 2d 266, 271, 2003 Miss. LEXIS 600, at *10-11 (2003). Application of these principles to the facts at issue reveals that RTIH has not alleged facts regarding unilateral mistake sufficient to satisfy the heightened pleading standard of Rule 9(b). RTIH asserts that it entered into the Agreements under the mistaken understanding that Tronox was a viable business. Other than conclusory allegations that a debtor cannot perform under a contract while in bankruptcy proceedings, a position rejected above, the Complaint is devoid of facts to support an inference that RTIH either held or depended on an expectation of Tronox's solvency, much less that Tronox gained an advantage over RTIH because of its diminished financial condition. At a minimum such allegations are necessary to counter the fact that, as noted above, the Supply Agreement explicitly contemplates the possibility of a bankruptcy filing by Tronox, wholly undercutting RTIH's generalized assertions. In the absence of particular facts to indicate that Tronox's solvency was fundamental to RTIH's decision to

10

execute the contract, this Court cannot infer that a mistake relating to such subject matter prevented a meeting of the minds.

In any event, even if the allegations were particularized, the Plaintiff's alleged mistake is not one that would justify rescission of a contract. "[M]istakes as to market conditions or financial ability do not justify avoidance under the rules governing mistake." Restatement (Second) of Contracts § 153 cmt. b (1981); s*ee also Hunt v. Davis*, 45 So. 2d 350, 351-52, 1950 Miss. LEXIS 290, at *23 (1950), *quoting Terre Haute Cooperage Inc. v. Branscome*, 25 So. 2d 537, 540, 1948 Miss. LEXIS 297, at *11 (1948) ("[I]t has been said that equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts.").

Since the Complaint fails to plead particularized facts sufficient to satisfy the requirements for rescission of a contract for unilateral mistake under Mississippi law, the motion to dismiss this claim is granted.

### 2. **Mutual Mistake**

A contract may also be set aside where both parties at the time of the agreement were operating under a mutual mistake of fact relating "to the nature of the contract, the identity of the person with whom it is made, or the identity or existence of the subject matter." *Greer v. Higgins*, 338 So. 2d 1233, 1236, 1976 Miss. LEXIS 1655, at *9 (1976), *quoting* 17 C.J.S. *Contracts* § 144. An actionable mutual mistake must be one made by "both parties at the time a contract was made as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances." Restatement (Second) of Contracts § 152(1) (1981).

11

While parties may plead "two or more statements of a claim or defense alternatively or hypothetically … regardless of consistency," Fed. R. Civ. P. 8(d)(2)-(3), Plaintiff's mutual mistake claim suffers from the same fatal flaw as its unilateral mistake claim. Since Plaintiff has not pled facts sufficient under Rule 9(b) with respect to its own mistake, it certainly has not adequately pled facts as to both its own mistake *and* Tronox's mistake. In any event, as to Tronox's alleged mistake, it cannot rationally be assumed that Tronox did not, in fact, know its financial position at the time it negotiated the Agreements.

The cases cited by RTIH in support of its mutual mistake claim are distinguishable. In *Greer v. Higgins*, 338 So. 2d 1233, 1234, 1976 Miss. LEXIS 1655, at \*1-2 (1976), the several heirs of an estate, laboring under the understanding that the deceased had left no will, executed quit claim deeds for tracts of land in allocations upon which they all agreed. Upon discovery of a will containing a different apportionment, a complaint alleging mutual mistake was filed, and the Mississippi Supreme Court canceled the deeds. *Id.* at 1234-36, 1976 Miss. LEXIS 1655, at \*1-10. Plaintiff contends that its misunderstanding as to Tronox's financial condition is a material mistake similar to the mistake in *Greer* because both were conditions that, if known, would have precluded consummation of the transaction. However, putting aside the fact that the contract here contained specific remedies relating to a potential bankruptcy filing by Tronox, the subject matter of the alleged mistake is entirely different. As noted above, "mistakes as to market conditions or financial ability do not justify avoidance under the rules governing mistake." Restatement (Second) of Contracts § 153 cmt. b (1981).

Similarly, *Cole GP II, LLC v. Kenlan Dev., LLC*, No. 3:07CV75-SA-SAA, 2009 U.S. Dist. LEXIS 1928 (N.D. Miss. Jan. 12, 2009), is factually dissimilar to the immediate dispute. *Cole* concerned a purchase agreement for a movie theater that was agreed with the understanding

12

that a third-party, a tenant, would operate at a profit. *Id.* at \*4. The *Cole* Court, ruling on a motion for summary judgment, held that the plaintiff had alleged facts sufficient to create a genuine issue of material fact that both parties were mistaken as to the tenant's profitability. *Id.* at \*11-12. This, of course, was the financial performance of a third party, not the financial ability of one of the contracting parties to fulfill the contract.

In contrast to *Cole*, in this case, there is a complete failure to allege with particularly how either party was mistaken as to Tronox's ability to supply a chemical manufacturing facility. Rescission of a contract based on mistake must be supported with particularized facts. In light of § 14.3 of the Supply Agreement and without any facts in the Complaint to support Plaintiff's theory, its allegations in the Complaint do not rise to the level necessary to satisfy Rule 9(b). The motion to dismiss the claim based on mutual mistake is therefore granted.

## **Conclusion**

For the reasons set forth above, the motion to dismiss the Complaint is granted. Tronox's counsel shall settle an order on three days' notice.

Dated: February 9, 2010
      New York, New York

                                           */s/ Allan L. Gropper*
                                       UNITED STATES BANKRUPTCY JUDGE