| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| ----------------------------------------------------------------x | |
| In re: | Chapter 11 |
| TRONOX INCORPORATED, *et al.*, | Case No. 09-10156 (ALG) |
| Debtors. | Jointly Administered |
| ----------------------------------------------------------------x | |
| RTI HAMILTON, INC., | |
| Plaintiff, | |
| -against- | Adv. Pro. No. 09-01488 (ALG) |
| TRONOX LLC, | |
| Defendant. | |
| ----------------------------------------------------------------x | |

## MEMORANDUM OF DECISION AND ORDER

APPEARANCES:

BUCHANAN INGERSOLL & ROONEY PC
Counsel for the Plaintiff
  By:   Charles B. Gibbons, Esq.
           Michael J. Manzo, Esq.
           Daniel C. Garfinkel, Esq.
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, Pennsylvania 15219

  By:   Christopher P. Schueller, Esq.
620 Eighth Avenue, 23rd Floor
New York, New York 10018

KIRKLAND & ELLIS LLP
Counsel for the Defendant
  By:   David J. Zott, Esq.
           Patrick J. Nash, Jr., Esq.
           Jeffrey J. Zeiger, Esq.
           David H. DeCelles, Esq.
300 North LaSalle Street
Chicago, Illinois 60654

By:   Richard M. Cieri, Esq.
       Jonathan S. Henes, Esq.
601 Lexington Avenue
New York, New York 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

   This is an adversary proceeding in which RTI Hamilton, Inc. ("RTIH") seeks a declaratory judgment terminating and nullifying certain agreements it entered into with Tronox LLC ("Tronox"), one of the above-captioned debtors. On February 9, 2010, this Court issued a Memorandum of Decision granting Tronox's motion to dismiss RTIH's Adversary Complaint (the "Original Complaint"). *RTI Hamilton, Inc. v. Tronox LLC*, 2010 WL 502836 (Bankr. S.D.N.Y. Feb. 9, 2010), (the "Memorandum of Decision"). RTIH has now moved to amend the Original Complaint under Fed. R. Civ. P. 15(a) based on (1) an amended claim of breach of contract, (2) amended claims of unilateral or, alternatively, mutual mistake, and (3) a new claim of negligent misrepresentation. For the reasons set forth below, the motion to amend is denied as futile, as each of the proposed amendments is insufficient as a matter of law.

## Background

   The facts of this case are set forth in the Memorandum of Decision, familiarity with which is assumed. In brief, RTIH and Tronox are parties to a Master Supply Agreement, dated March 25, 2008 (the "Supply Agreement"), and a Master Ground Lease of Commercial and Industrial Property, dated June 3, 2008 (together with the Supply Agreement, the "Agreements"), which require RTIH to construct a titanium sponge manufacturing facility located adjacent to Tronox's Hamilton, Mississippi plant. Under the Agreements, Tronox is to supply RTIH's facility with titanium tetrachloride and RTIH is to provide Tronox's Hamilton plant with chlorine gas, both of which are to be transported between the two facilities via separate pipelines.

2

## Discussion

### I. Standard of Review

Leave to amend a pleading under Fed. R. Civ. P. 15(a), made applicable by Fed. R. Bankr. P. 7015, "should be freely" given "when justice so requires." The policy underlying Rule 15 is that cases should be decided on the merits, not on procedural technicalities. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). On the other hand, it "is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 730-32 (2d Cir. 1998); *see also Foman*, 371 U.S. at 182; *Deere & Co. v. MTD Holdings Inc.*, 2003 WL 22439778, at *2-3 (S.D.N.Y. Oct. 28, 2003).

### II. Breach of Contract Claim

In its Original Complaint, RTIH asserted that Tronox's failure to disclose its financial condition breached Article 14.1 of the Supply Agreement. The claim was dismissed on the ground that Article 14.1 did not contain a warranty or representation by Tronox as to its financial condition, and that Article 14.3 of the Supply Agreement specifically contemplated the possibility of a bankruptcy filing by Tronox. Reading the contract as a whole and giving effect to every provision, Plaintiff could not plausibly assert a breach of Article 14.1 by virtue of Tronox's alleged failure to disclose its financial condition.

In its Amended Complaint, RTIH seeks to resuscitate its claim for breach of contract by now alleging that Tronox breached Article 14.2 of the Supply Agreement, which warrants and represents that "there are no claims, demands, investigations, actions, suits or other legal proceedings…pending or threatened against [Tronox] that would impair the ability of [Tronox] to execute, deliver or perform under this Agreement." In support, RTIH lists a series of claims,

3

demands, investigations and actions that were assertedly pending at the time of the execution of the Supply Agreement that, RTIH asserts, impaired Tronox's ability to perform under the Supply Agreement.[1]

As was the case with respect to its alleged breach of Article 14.1, RTIH's new contention can be disposed of within the four corners of the Supply Agreement. As RTIH points out, any breach of 14.2 must be determined as of the time the parties entered into the Agreements. (Brief in Support of Plaintiff's Motion to Amend, 6.) Thus, in order to sustain its claim, RTIH must show that on March 25, 2008, (1) there was a claim, demand, investigation, action or legal proceeding that (2) *would* impair the ability of Tronox to execute, deliver or perform under the Supply Agreement. While RTIH has listed a series of claims and actions that were pending against Tronox at the time it executed the Supply Agreement, it does not allege that any of the asserted claims, demands, investigations or actions had any relation to the Tronox Mississippi facility. Indeed, RTIH has not alleged that Tronox has defaulted on any of the terms of the Agreements to date. Nor has RTIH alleged that Tronox cannot as a debtor in possession or as a reorganized debtor continue to perform under the Supply Agreement. In short, RTIH does not allege how any one of those claims and actions impaired, or would impair in any respect, Tronox's ability to perform under the agreement at the time of execution. Rather, RTIH's position is reducible to its theory that Tronox's financial condition as a debtor somehow breached the Agreements, a position that has previously been rejected by this Court. *See RTI Hamilton*, 2010 WL 502836 at *3-4.

---

[1] These claims, demands, investigations, and actions include: (1) a $178 million demand from the Environmental Protection Agency ("EPA") for clean-up costs incurred at a wood treatment facility located in Manville, New Jersey; (2) approximately ten additional wood treatment sites subject to potential demands by the EPA for substantial clean-up costs; (3) thousands of personal injury tort claims related to wood treatment sites; (4) claims and demands related to 260 undisclosed agricultural chemical sites, five undisclosed former chemical manufacturing sites, and two undisclosed former fertilizer manufacturing sites; (5) claims and demands related to facilities located in Savannah, Georgia and Botlek, Netherlands; (6) claims and demands related to petroleum terminals, offshore drilling and hundreds of service station sites; and (7) 11,000 claims for personal injuries arising out of wood treatment sites.

As the Court held in the Memorandum of Decision, the Supply Agreement is a fully integrated agreement that on its face contains a specific provision, Article 14.3, in which the parties proposed to provide explicit protection to RTIH in the event of Tronox's bankruptcy. Article 14.3 reads as follows:

> TRONOX represents and warrants that, in the event it files a petition for relief protection under any chapter of the Bankruptcy Code … or if involuntary bankruptcy proceedings are initiated against TRONOX … then TRONOX, upon written request of [RTIH], shall seek the assumption (and assignment, if requested) of this Agreement pursuant to § 365 of the Bankruptcy Code (11 U.S.C. § 365), and/or other similar provisions of the Bankruptcy Code governing the assumption of executory contracts.

The provision is not boilerplate and is intended to protect RTIH in the event of a filing by Tronox. Assuming that the provision is enforceable as drafted, Tronox, on RTIH's request, would be required to move to assume or assign the Supply Agreement and cure any default, and not leave RTIH in doubt as to Tronox's intentions as to performance. *See* 11 U.S.C. § 365(b). Even in the absence of a clause such as Article 14.3, there are Bankruptcy Code provisions that are designed to protect contracting parties in RTIH's position. For example, any counterparty can seek an order setting a deadline for a chapter 11 debtor to move to assume or reject an executory agreement. *See* 11 U.S.C. § 365(d)(2). The Debtor then has to show that there are no claims, demands, investigations, actions, or legal proceedings that would impair its ability to perform.

Since RTIH's contract claims under Article 14.2 of the Supply Agreement have no greater validity than its claims under Article 14.1 and are inconsistent with the express provisions of the Agreements, it would be futile to give RTIH leave to amend the Original Complaint to assert them.

5

### III.    Claims of Unilateral and Mutual Mistake

RTIH next seeks to amend its unilateral and mutual mistake claims.  Under Mississippi law, rescission of a contract based on unilateral mistake is appropriate

> [1] where the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or [2] where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed in status quo; equity will interfere, in its discretion, in order to prevent intolerable injustice.

*Ruff v. Estate of Ruff*, 989 So. 2d 366, 370 (Miss. 2008) (emphasis omitted), *quoting Rotenberry v. Hooker*, 864 So. 2d 266, 271 (Miss. 2003).  The Court previously dismissed RTIH's unilateral mistake claim for failure to plead, in accordance with Fed. R. Civ. P. 9(b),[2] that RTIH had an expectation of Tronox's solvency or that Tronox gained an advantage over RTIH because of its financial condition.  It also held that even if the allegations had been particularized, a mistake as to financial condition or ability does not justify avoidance of contractual obligations under the rules governing mistake, citing the *Restatement (Second) of Contracts* § 152 cmt. b (1981).

In its proposed Amended Complaint, RTIH has attempted to particularize its allegations as to its mistakes relating to Tronox's financial condition, adding allegations that Tronox's chief financial officer told RTIH's chief financial officer that Tronox was "in good financial condition," and that Citibank confirmed such representations.  RTIH further alleges that Tronox's financial viability was a "fundamental" prerequisite to the execution of the Agreements.  (Am. Compl. ¶¶ 86, 89).  Finally, RTIH cites *Ryan v. Ryan*, 640 S.E.2d 64, 69 (W. Va. 2006), for the proposition that *Restatement (Second) of Contracts* § 152 only relates to

---

[2] Rule 9(b) provides that a complaint alleging mistake "must state with particularity the circumstances constituting … mistake." Fed. R. Civ. P. 9(b); *see also Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  It has been held that a claim based on mistake "must particularize (1) the mistake (2) the identity of the individuals that made the mistake, (3) the nature of their misunderstanding, and (3) [sic] when and where the mistake occurred." *Responsible Pers. of Musicland Holding, Corp. v. Best Buy Co., Inc.*, 398 B.R. 761, 782 (Bankr. S.D.N.Y. 2008).

claims of mistake as to "future, rather than past or present, facts, occurrences or events," and therefore that its asserted mistake as to Tronox's present or past financial condition at the time the Agreements were executed provides cause for voiding them.

RTIH's proposed amendments still do not state a claim. As found in the Memorandum of Decision, the Supply Agreement specifically contemplated the possibility of, and provided remedies for, a bankruptcy filing by Tronox, and omitted any representation as to Tronox's financial condition. The terms of the contract thus contradict RTIH's assertions that Tronox's financial condition was "fundamental" to the execution of the Agreements. Nor does RTIH's Amended Complaint provide particularized facts that would support an inference that Tronox's financial condition damaged RTIH or gave Tronox an advantage over RTIH. Tronox is a chapter 11 debtor that is in the process of reorganization, not liquidation, and RTIH has not shown by particularized allegations in the amendments why Tronox cannot perform under the Agreements. In any event, and as discussed above, RTIH has recourse under the Bankruptcy Code. It can, for instance, move to set a deadline for Tronox to assume or reject the Agreements. If Tronox were to move to assume, the Court would have to make a finding based on evidence that Tronox is able to perform and provide adequate assurance of future performance, which RTIH would be able to contest.

Furthermore, RTIH's reliance on *Ryan* to refute this Court's interpretation of *Restatement* § 152 is unpersuasive. While the *Ryan* Court did state that a "contract may not be reformed or rescinded…if the mistake relates to a mistaken belief, judgment, or expectation as to future, rather than past or present, facts, occurrences or events," the same portion of the opinion quotes the *Restatement* for the unqualified principle that a "'mistake as to market conditions or financial ability do [sic] not justify avoidance under the rules governing mistake.'" 640 S.E.2d at 69,

7

*quoting Restatement (Second) of Contracts* § 152 cmt. b (1981). RTIH does not cite any authority for the proposition that a mistake as to a party's present financial ability is actionable while a mistake as to future ability is not. Any such distinction would be impractical, as the real issue is a party's ability to perform under the contract, which looks to the future.

As discussed in the Memorandum of Decision, Rule 9(b) is designed to deter baseless claims of "mistake" by parties who fail to provide for financial or other representations in a contract and then try to avoid the contractual obligations altogether. The allegations as to mistake were insufficient in the Original Complaint and are not cured by the Amended Complaint.

Since the Amended Complaint contains insufficient allegations of unilateral mistake as to any material fact, *a fortiori*, it contains insufficient claims as to mutual mistake.

### IV.     Negligent Misrepresentation Claim

Finally, RTIH seeks leave to amend its Complaint to add a claim of negligent misrepresentation based on its allegation that Tronox negligently misrepresented its financial condition. Under applicable Mississippi law, the following elements must be established in order to sustain a claim of negligent misrepresentation:

> (1) a misrepresentation or omission of fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such person/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the Plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Horace Mann Life Ins. Co. v. Nunaley*, 960 So.2d 455, 461 (Miss. 2007). RTIH's proposed Amended Complaint fails to satisfy at least two of these elements. First, RTIH's has not pled adequately that it relied on representations made by Tronox. RTIH asserts that it relied on the representation and warranty made in Article 14.2 as to the

8

non-existence of material claims, as well as on representations regarding Tronox's financial health allegedly contained in its financial statements and made by Tronox's chief financial officer and a representative of Citibank.  As discussed above, however, RTIH's generalized claims of reliance on financial data are insufficient to overcome the fact that the Supply Agreement explicitly contemplates a Tronox bankruptcy.  (Supply Agreement Article 14.3).

Second, RTIH fails to allege that Tronox's alleged misrepresentations caused RTIH damages.  RTIH claims that it would not have entered into the Supply Agreement but for the misrepresentations and that it has already invested "millions of dollars" to perform under the contract.  (Am. Compl. ¶ 104).  Under Mississippi law, however, entering into a contract and incurring costs contemplated under the contract do not state a claim for damages.  See *Horace Mann Life Ins. Co.*, 960 So.2d at 461-62, reversing a jury verdict based on a negligent representation where the plaintiff could not prove the "necessary element of damages," even though plaintiff claimed that she would not have entered into the contract absent the alleged misrepresentations, and notwithstanding payments that she had made under the insurance contract.  Assertion of a facially viable claim of damages is particularly important in a case like this, where a counterparty to a contract with a chapter 11 debtor is protected by the statutory requirement that the debtor provide adequate assurance of future performance before it can assume the contract.  11 U.S.C. §365(b).  This statutory protection makes it highly unlikely that RTIH could state a claim for damages for negligent misrepresentation; in any event, it has not done so in the Amended Complaint.

9

The sole Mississippi case cited by RTIH is *Chapman v. Safeco Ins. Co. of Am.*, 722 F. Supp. 285, 293 (N.D. Miss. 1989). There was no issue in that case, however, as to the existence of damages, and in any event, the holding in *Chapman* involved a Mississippi statute that applies only to insurance contracts. *See* 722 F. Supp. at 293 ("[A]n innocent misrepresentation of a fact material to the risk being assumed is grounds for granting rescission of *an insurance contract*.") (emphasis added). In analogous cases in other states, courts have held that damages are an essential element of a claim of negligent misrepresentation. *See Wilkies Assoc. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 957 (S.D. Ohio 2001) (where the Court, applying Ohio law, found no damages even though plaintiffs claimed that they would have asked for additional provisions in a contract absent the alleged misrepresentations); *see also Zamora-Garcia v. Moore*, 2006 WL 2663802, *12 (S.D. Tex. Sept. 15, 2006) (where the Court, applying Texas law, found that in order to recover on a negligent misrepresentation claim, plaintiffs must show that they suffered an injury independent of damages claimed for breach of contract).

## Conclusion

Because the proposed amendments in RTIH's Amended Complaint do not state a claim on which relief may be granted, the proposed amendments would be futile. Accordingly, RTIH's motion to amend is denied.

IT IS SO ORDERED.

Dated: New York, New York
      May 14, 2010

                                        /s/ Allan L. Gropper
                                        UNITED STATES BANKRUPTCY JUDGE